**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 07-1343**

BERTRAM HAHN,

        Plaintiff - Appellant,

    v.

UNITED STATES OF AMERICA,

        Defendant - Appellee.

Appeal from the United States District Court for the District of
Maryland, at Greenbelt.  Peter J. Messitte, Senior District
Judge.  (8:06-cv-03179-PJM)

Argued: September 25, 2008      Decided: November 5, 2008

Before WILLIAMS, Chief Judge, GREGORY, Circuit Judge, and James
C. CACHERIS, Senior United States District Judge for the Eastern
District of Virginia, sitting by designation.

Affirmed by unpublished opinion.  Judge Gregory wrote the
opinion, in which Chief Judge Williams and Senior Judge Cacheris
joined.

**ARGUED:** Clifford John Shoemaker, Vienna, Virginia, for
Appellant.  Alex Samuel Gordon, OFFICE OF THE UNITED STATES
ATTORNEY, Baltimore, Maryland, for Appellee.  **ON BRIEF:** Timothy
Litka, Washington, D.C., for Appellant.  Rod J. Rosenstein,
United States Attorney, John W. Sippel, Jr., Assistant United
States Attorney, OFFICE OF THE UNITED STATES ATTORNEY,
Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

GREGORY, Circuit Judge:

The Appellant, Bertram Hahn ("Hahn"), appeals the district court's decision to dismiss his Federal Tort Claims Act ("FTCA") lawsuit against the United States. Hahn had initially filed an administrative complaint with the Department of the Army Claims Services ("DACS") and the Department of the Navy Claims Services ("DNCS"), alleging that he had received negligent medical treatment. Hahn's claim was denied by DACS on the ground that Hahn had failed to file an administrative complaint within two years after the claim accrued, as required by 28 U.S.C. § 2401(b) (2000). Hahn subsequently filed the instant lawsuit. Upon motion by the United States, the district court dismissed Hahn's complaint for lack of subject matter jurisdiction, relying on the same ground as DACS.

Because Hahn should have known of the existence and likely cause of his injury more than two years before he filed his administrative complaint, we affirm the decision of the district court.

I.

On May 17, 2000, Hahn went to the emergency room at Bethesda National Naval Medical Center ("BNNMC") complaining of severe weakness in the limbs. Medical personnel at BNNMC diagnosed Hahn as having Guillain-Barré Syndrome ("GBS"), an

3

acute auto-immune neurological disorder.  The medical personnel at BNNMC ordered that Hahn receive intravenous immunoglobulin ("IVIg") treatment for five days.  Later that day, Hahn was transferred to Walter Reed Army Medical Center ("WRAMC"), where his diagnosis and course of treatment were confirmed.  Medical personnel at WRAMC began IVIg treatment on May 18, 2000.  That same day, Hahn was transferred back to BNNMC and admitted to an intensive care unit with orders to continue the five days of IVIg treatment.  According to Hahn, medical personnel at BNNMC failed to follow these instructions and only administered IVIg treatment for one more day.  At that time, Hahn was unaware that he was scheduled to receive five days of IVIg treatment.  Hahn remained in the intensive care unit at BNNMC until May 21, 2000, when he was transferred to the medical ward at BNNMC.  On May 23, 2000, Hahn was transferred to the rehabilitation ward at WRAMC, where he remained until his discharge in June 2001.

After Hahn was discharged from WRAMC, he continued to suffer from residual weakness.  Hahn had been told that some GBS patients continue to have residual weakness after receiving treatment.  Nevertheless, Hahn consulted with several other doctors regarding further rehabilitation because he was dissatisfied with his level of recovery.  Hahn acknowledges that he began receiving consultations from these other doctors in June 2001.  (Supp. J.A. 21.)  According to Hahn, these doctors

4

asked him whether he had been given any subsequent IVIg treatments or whether he had been given a plasma exchange following the initial IVIg treatment. Hahn answered these questions in the negative, after which the doctors either responded by saying "Oh?" or remained completely silent. (Supp. J.A. 90.)

In August 2003, Hahn met with Dr. Jay Meythaler regarding enrollment in a clinical drug trial for treatment of GBS. Although the initial meeting with Dr. Meythaler was similar in many respects to Hahn's prior consultations, this consultation differed crucially because Hahn provided Dr. Meythaler with his medical records as part of the assessment for the clinical drug trial. Three days after receiving these medical records, Dr. Meythaler advised Hahn that BNNMC medical personnel had failed to administer the full five days of IVIg treatment and that this failure may have caused his residual weakness.

On February 26, 2004, Hahn filed an administrative complaint with DACS and DNCS. Hahn's claim was denied by DACS on February 1, 2006. On April 19, 2006, Hahn filed this lawsuit against the United States under the FTCA, 28 U.S.C. §§ 2671-2680 (2000), in the United States District Court for the District of Columbia. Upon motion by the United States, the court transferred the case to the United States District Court for the District of Maryland. The United States then filed a motion to

5

dismiss the complaint for lack of subject matter jurisdiction because Hahn had failed to bring his administrative complaint within two years after the claim accrued, as required by 28 U.S.C. § 2401(b). The district court granted the motion to dismiss. Hahn appeals.

## II.

Hahn contends that the district court erred in granting the motion to dismiss for lack of subject matter jurisdiction because his claim did not accrue until August 2003, when Dr. Meythaler told Hahn that his residual weakness may have been caused by his medical treatment. We review de novo the district court's grant of a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768-69 (4th Cir. 1991). When deciding a 12(b)(1) motion, "the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Id. at 768. The party asserting subject matter jurisdiction has the burden of proving that the court has jurisdiction over the case. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). "Unlike the procedure in a 12(b)(6) motion where there is a presumption reserving the truth

finding role to the ultimate factfinder, the court in a 12(b)(1) hearing weighs the evidence to determine its jurisdiction." Id.

As a sovereign, the United States is immune from suit unless it consents to being sued. United States v. Sherwood, 312 U.S. 584, 586 (1941). When the United States consents to suit for a class of cases, the terms of its consent circumscribe the court's jurisdiction to entertain a particular suit. Id. at 586-87. Congress created such a limited waiver of sovereign immunity in enacting the FTCA. See 28 U.S.C. §§ 2671-2680. Under the FTCA, the United States consents to suit for injuries caused by the negligent acts or omissions of government employees acting within the scope of their official employment. 28 U.S.C. § 2674; Gould v. U.S. Dep't of Health & Human Servs., 905 F.2d 738, 741 (4th Cir. 1990) (en banc). Congress further prescribed a statute of limitations that operates as a jurisdictional prerequisite to suit under the FTCA, 28 U.S.C. § 2401(b). Gould, 905 F.2d at 741. According to § 2401(b), "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues . . . ."

In United States v. Kubrick, 444 U.S. 111, 123-24 (1979), the Supreme Court first articulated the standard for determining when a claim "accrues" for the purposes of the FTCA in the

7

context of injuries caused by medical malpractice, holding that such a claim "accrues" when a claimant knows of both the existence of the injury and the cause of the injury. Actual knowledge of negligent treatment is not necessary in order to trigger the running of the statute of limitations; rather, once the claimant is "in possession of the critical facts that he has been hurt and who has inflicted the injury," the claimant has a duty to make diligent inquiry into whether the injury resulted from a negligent act. Id. at 122; accord Gould, 905 F.2d at 743. According to this Court, "[t]he clear import of Kubrick is that a claim accrues within the meaning of § 2401(b) when the plaintiff knows or, in the exercise of due diligence, should have known both the existence and the cause of his injury." Gould, 905 F.2d at 742. Even if a claimant seeks the advice of other medical providers and is incorrectly advised that he did not receive negligent treatment, such advice will not prevent the accrual of the claim. Kubrick, 444 U.S. at 124. Furthermore, a claim will accrue even if the claimant does not know the precise medical reason for the injury, provided that he knows or should know that some aspect of the medical treatment caused the injury. See Kerstetter v. United States, 57 F.3d 362, 364-65 (4th Cir. 1995).

In deciding whether such claims are timely filed, we must keep in mind that § 2401(b) represents "the balance struck by

8

Congress in the context of tort claims against the Government; and we are not free to construe it so as to defeat its obvious purpose, which is to encourage the prompt presentation of claims." Kubrick, 444 U.S. at 117. While a strict interpretation of § 2401(b) "often works a substantial hardship on plaintiffs and may have a harsh impact on a party innocent of any impropriety," such an interpretation is necessary to avoid "rewriting the FTCA to allow broad, open-ended exceptions." Gould, 905 F.2d at 747.

Based on the precedent of the Supreme Court and this Circuit, it is clear that Hahn's claim accrued in June 2001, at the time that Hahn began consulting with other doctors upon his discharge from the hospital. Hahn first contends that he had no knowledge of the existence of his injury at the time of discharge because his condition had appreciably improved as a result of the medical treatment. While it is true that some medical treatments might not produce a complete recovery even if non-negligently administered, Hahn admits that he consulted with other doctors because he was dissatisfied with his rehabilitation and wanted to see if other doctors could effect a more complete recovery. Given Hahn's dissatisfaction with his level of recovery at the time of discharge, together with his subsequent consultations with other doctors, he was put on notice of the existence of an injury.

9

Hahn next contends that even if he had knowledge of the existence of an injury, he had no knowledge that the injury was caused by BNNMC's failure to administer the initial IVIg treatment for five days. In support of this contention, Hahn points to the fact that he consulted with several doctors regarding his rehabilitation and that none of the doctors specifically informed him that his residual weakness was caused by the incomplete IVIg treatment. Hahn's argument is flawed because it assumes that a claimant cannot be charged with knowing the cause of an injury until the claimant has been actually informed of its specific cause. However, the relevant inquiry is not whether the plaintiff actually knows of the cause of the injury, but whether he "knows or, in the exercise of due diligence, should have known . . . [of] the cause of his injury." Gould, 905 F.2d at 742.

Hahn consulted with several doctors beginning in June 2001, and those doctors directly asked him whether he had been given any subsequent IVIg treatments or a plasma exchange following the initial IVIg treatment. When Hahn responded in the negative, the doctors' consistent, nonplussed reactions should have put him on notice that his medical treatment might have been the cause of his residual weakness. A reasonable person exercising due diligence under the same circumstances would have provided the doctors with his medical records and asked the

10

doctors whether some aspect of his treatment might have caused his incomplete recovery. Hahn admits that he did not inquire further or provide any of the doctors with his medical records until his meeting with Dr. Meythaler in August 2003. In fact, Hahn's consultation with Dr. Meythaler demonstrates that had Hahn exercised the same due diligence when he first began consulting with other doctors, he would have been able to ascertain the precise medical reason for his injury and file his claim well within the two-year statute of limitations.

If this Court were to adopt Hahn's interpretation of the Kubrick standard, it would effectively eliminate the requirement that a claimant exercise due diligence in ascertaining the existence of an injury and its likely cause. See Gould, 905 F.2d at 742; Kerstetter, 57 F.3d at 364. Such an interpretation is directly contrary to our precedent and at odds with the public policy concerns of timely claim presentation that underlie § 2401(b). We do not hold that a person is automatically put on inquiry notice merely from the fact that he received medical treatment and did not make a complete recovery. We only conclude that, under these particular circumstances, Hahn was put on notice of an injury and would have discovered the likely cause of this injury had he exercised due diligence.

Since Hahn's claim accrued in June 2001 for purposes of the FTCA, his filing of the administrative complaint on

11

February 26, 2004 was outside of the two-year statute of limitations provided by § 2401(b). Since § 2401(b) is a jurisdictional prerequisite to suit under the FTCA, the district court lacked subject matter jurisdiction to hear the suit.

## III.

For the foregoing reasons, we affirm the judgment of the district court.

<u>AFFIRMED</u>