Kenneth KERSTETTER; Pamela Kerstetter; Elizabeth Kerstetter, by and through her next friends and parents, Kenneth and Pamela Kerstetter, Plaintiffs–Appellants,

v.

UNITED STATES of America, Defendant–Appellee.

No. 94–2015.

United States Court of Appeals, Fourth Circuit.

Argued April 3, 1995.

Decided June 7, 1995.

**ARGUED:** Robert T. Hall, Hall, Markle, Sickles & Fudala, P.C., Fairfax, VA, for appellants. Lowell Vernon Sturgill, Jr., Civ. Div., U.S. Dept. of Justice, Washington, DC, for appellee. **ON BRIEF:** Holly Parkhurst Lear, Hall, Markle, Sickles & Fudala, P.C., Fairfax, VA, for appellants. Frank W. Hunger, Asst. Atty. Gen., Helen F. Fahey, U.S. Atty., Robert S. Greenspan, Mark C. Niles, Civ. Div., U.S. Dept. of Justice, Washington, DC, for appellee.

Before WIDENER and LUTTIG, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

Affirmed in part, reversed in part, and remanded by published opinion. Senior Judge PHILLIPS wrote the opinion, in which Judge WIDENER and Judge LUTTIG joined.

## OPINION

PHILLIPS, Senior Circuit Judge:

Kenneth Kerstetter and Pamela Kerstetter, husband and wife, appeal the dismissal of their action brought pursuant to the Federal Tort Claims Act ("FTCA") wherein they sought recovery, on behalf of their minor child Elizabeth for the personal injuries she sustained as a result of alleged medical negligence by government doctors, and, in their individual capacities, for the recovery of medical expenses. The district court granted the government's motion for summary judgment on the grounds that (1) the statute of limitations had run as plaintiffs' claims had accrued more than two years prior to the submission of the administrative claim; and (2) the Soldier's and Sailor's Civil Relief Act ("SSCRA") did not toll the statute of limitations on the father's claim for medical expenses. The Kerstetters argue that their claims did not accrue until they discovered the cause of Elizabeth's injury in September 1990 and, therefore, that their filing of an administrative claim in August 1992 made their action timely. Alternatively, they argue that even if their claim accrued earlier, the district court erred in holding the SSCRA's tolling provision inapplicable.

We agree with the district court that the Kerstetter's causes of action accrued no later than July 1987. However, we are also persuaded that the SSCRA's tolling provision does apply to Kenneth's claims for medical expenses. We therefore affirm the district court's dismissal of the personal injury claims that Kenneth and Pamela Kerstetter brought on behalf of their daughter. We reverse the district court's dismissal of the father's own claims for medical expenses. We remand for further proceedings.

### I.

Elizabeth was born at Portsmouth Naval Hospital on May 31, 1987. (Her father, Kenneth, was on active duty in the Navy from October 15, 1986 through January 7, 1992.) At the time of her birth, a routine physical examination revealed that Elizabeth had a large abdominal mass which further tests revealed to be a malignant tumor (neuroblastoma). Attending physicians advised immediate surgery to remove the mass, allegedly without presenting the alternatives to surgery such as radiation or chemotherapy and without detailing all the risks that the surgery would entail. After the parents' consent, surgery was performed on June 4, 1987. Prior to the operation, Elizabeth's bladder functions were normal. After the operation, she was unable to urinate. The attending surgeon informed the Kerstetters that Elizabeth's kidneys had shut down during surgery and opined that this might be a normal shock response that would clear up shortly. It did not clear up. In late June or early July 1987, the Kerstetters were informed that Elizabeth's natural kidneys would never resume functioning. Elizabeth received a kidney transplant in October 1987 and again in February 1991 when the first transplant failed.

The Kerstetters filed an administrative claim with the Department of the Navy on August 5, 1992. That claim was denied on

July 27, 1993. On August 2, 1993, the Kerstetters filed this suit against the United States under the FTCA in the Eastern District of Virginia. They sought recovery under four theories: negligent failure to reduce the tumor prior to surgery (Count I); negligence in the performance of the surgery (Count II); failure to obtain informed consent by failing to advise the parents of the risks of surgery (Count III); and failure to obtain informed consent by failing to advise the parents of alternatives to surgery (Count IV). On each count, Elizabeth, by and through her parents, sought damages for, inter alia, loss of renal functioning and pain and suffering, and Kenneth and Pamela sought medical expenses as well as damages for loss of services and emotional distress.

Following discovery, the Government moved for summary judgment on the grounds that the FTCA's two-year statute of limitations had run before the Kerstetters filed their requisite administrative claim. In the alternative, the Government sought partial summary judgment raising issues not pertinent to this appeal. The district court ruled at the subsequent hearing that the parents could not bring a cause of action for emotional distress or loss of companionship under Virginia law and dismissed those claims accordingly. Shortly thereafter, it issued an order granting the government's motion for summary judgment on the grounds that all claims were time-barred. The court held that the FTCA Statute of Limitations had elapsed and that the SSCRA did not apply to Kenneth Kerstetter's claim for medical expenses because that was a derivative claim under Virginia law.

■ The Kerstetters filed a timely notice of appeal challenging the district court's rulings that their causes of action accrued before September 1990 and that the SSCRA did not toll Kenneth's claim for medical expenses. We review the grant of summary judgment *de novo*. *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir.1994).

## II.

The FTCA provides in relevant part: "A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate federal agency within two years after such claim accrues...." 28 U.S.C. § 2401(b) (1994). The district court found that the Kerstetters' claim accrued no later than July 1987 and, therefore, that the administrative claim filed in August 1992 was time-barred.

■ Accrual of a claim in medical malpractice occurs when the plaintiff became aware—or would have become aware through the exercise of due diligence—both of the existence of injury and of its cause. *United States v. Kubrick*, 444 U.S. 111, 120, 100 S.Ct. 352, 358, 62 L.Ed.2d 259 (1979); *Gould v. U.S. Dept. of Health & Human Servs.*, 905 F.2d 738, 742 (4th Cir.1990) (en banc). There is no question in this case that the Kerstetters became aware of the *injury* to Elizabeth by July 1987, when they learned that Elizabeth's kidney failure was permanent. Plaintiffs contend, however, that they did not become aware of the *cause* of the injury until September 1990, at which point a doctor at Children's Hospital National Medical Center informed them that Elizabeth's renal failure was due to damage to the blood vessels serving the kidney. They argue further that they had been unable previously to discern the precise cause of Elizabeth's kidney's failure despite their diligent inquiries: doctors at Portsmouth Naval Hospitals did not disclose the reason why Elizabeth's kidney's shut down because, the Kerstetters claim, they simply did not know.

■ This is not, as might first appear, a factual dispute regarding when the Kerstetter's actually knew the cause of Elizabeth's injury and whether, if they did not know the cause until September 1990, they exercised due diligence. Rather, this issue boils down to a pure question of law: what does "cause" mean for purposes of the FTCA. The Kerstetters' argument is premised on their construction of the word to refer to the *precise medical reason* for the injury. In contrast, the Government and the district court read the term at a greater level of generality—one that would require, in this case, only knowledge that *the operation* caused the injury.

The Supreme Court's decision in *Kubrick* clearly reveals that the government's inter-

pretation is the correct one. The plaintiff in that case suffered hearing loss approximately six weeks after being treated for a leg infection at a Veterans' Administration (VA) Hospital. In January 1969, some nine months after his treatment, Kubrick learned that his hearing loss probably was caused by the VA doctors' administration of the antibiotic neomycin. Not until June 1971, however, did he learn that the administration of neomycin likely constituted negligence. Kubrick filed suit under the FTCA in late 1972, more than two years after having learned the probable cause of his injury but less than two years after discovering that the doctors might have been guilty of malpractice. *Kubrick* thus presented the question whether a claim can "accrue" under the FTCA before the plaintiff becomes aware (or reasonably should have become aware) that his injury was negligently inflicted. The Court answered in the affirmative, explaining that it was

> unconvinced that for statute of limitations purposes a plaintiff's ignorance of his legal rights and his ignorance of the fact of his injury or its cause should receive identical treatment. That he has been injured in fact may be unknown or unknowable until the injury manifests itself; and the facts about causation may be in the control of the putative defendant, unavailable to the plaintiff or at least very difficult to obtain. *The prospect is not so bleak for a plaintiff in possession of the critical facts that he has been hurt and who has inflicted the injury.* He is no longer at the mercy of the latter. There are others who can tell him if he has been wronged, and he need only ask. If he does ask and if the defendant has failed to live up to the minimum standards of medical proficiency, the odds are that a competent doctor will so inform the plaintiff.

444 U.S. at 122, 100 S.Ct. at 359 (emphasis added). By this very same reasoning, it should not make a difference when the plaintiff learns just what went wrong during a medical operation. So long as the plaintiff knows "the critical fact" of "who has inflicted the injury," he can act to protect his rights by inquiring whether the injury was inflicted negligently. If he comes to suspect that it was, then he can file suit even before he discovers the precise medical cause of the operation's failure. After all, it might not be until discovery that he gains a satisfactory appreciation of the immediate cause of his injury.

Decisions from other circuits confirm our view. Most notable is *Price v. United States,* 775 F.2d 1491 (11th Cir.1985), where Navy doctors performed a hysterectomy upon Ms. Price and discovered upon removal of the uterus that she was eight weeks pregnant. Three years later, Ms. Price discovered that her pregnancy test had come out positive but had been erroneously recorded as negative. The Eleventh Circuit upheld the dismissal of the subsequent suit on statute of limitations grounds. It explained:

> Once the plaintiff discovers that her injury is probably attributable to some act of those who treated her, there is no longer any reason to toll the statute of limitations.... In holding [in *Kubrick*] that a medical malpractice claim does not accrue until the plaintiff discovers the "cause" of her injury, the Court did not hold that the statute of limitations period is tolled until the plaintiff knows the particular acts that resulted in her injury. The Court held only that the claim does not accrue until the plaintiff knows that her injury is connected to some act of those who treated her.

*Id.* at 1493–94. *See also Sexton v. United States,* 832 F.2d 629, 633–34 (D.C.Cir.1987) (holding that even when an injury's "cause might be characterized in a variety of ways ... a plaintiff's understanding of the basic nature of the treatment should suffice to begin the statute running").

The Kerstetters counter with a series of "blameless ignorance" cases which excuse a plaintiff's reasonable reliance on her doctor's diagnosis or prognosis. These cases, however, are inapposite. They stand for two propositions. First, a plaintiff does not know the cause of her injury within the meaning of § 2401(b) and *Kubrick* when physicians' mistaken diagnoses about (or utter inability to diagnose) the medical cause of her injury prevent her from identifying the party likely responsible for her injury. *See, e.g., Osborn*

*v. United States,* 918 F.2d 724, 733–34 (8th Cir.1990). Second, when a physician assures her patient that the evident ill effects of a medical procedure will be temporary, the patient does not know that he has suffered an "injury" until he learns that the harm will not in fact go away. *See, e.g., Otto v. NIH,* 815 F.2d 985, 989 (4th Cir.1987); *McDonald v. United States,* 843 F.2d 247, 249 (6th Cir.1988). The former articulation of the blameless ignorance rule has no possible application to the present case. The latter entails only that the Kerstetters did not become aware of Elizabeth's injury until, in late June or early July 1987, they learned that her kidney failure was permanent.

Because the Kerstetters became aware of the two facts critical for purposes of claim-accrual—that Elizabeth had been injured, and that the surgery caused her injury—no later than July 1987, the district court correctly determined that the FTCA statute of limitations barred all of the Kerstetters' claims unless the statute was tolled.

### III.

■ The SSCRA provides:

The period of military service shall not be included in computing any period now or hereafter to be limited by any law, regulation, or order for the bringing of any action or proceeding in any court ... by or against any person in military service or by or against his heirs, executors, administrators, or assigns....

50 U.S.C.App. § 525 (1990). The government properly acknowledges that, in appropriate cases, SSCRA does toll the FTCA's two-year statute of limitations. *See Miller v. United States,* 803 F.Supp. 1120, 1130 (E.D.Va.1992). And the Kerstetters agree that SSCRA applies only to members of the armed forces; it does not have even potential application to the claims they brought on behalf of Elizabeth. *See id.* at 1131 n. 4.

The only issue, therefore, is whether the SSCRA applies to toll Mr. Kerstetter's claim for medical expenses notwithstanding that Elizabeth's own action is time-barred. If so, Mr. Kerstetter's claim for medical expenses is timely.

Under the FTCA, liability of the United States is determined by "the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b); *Richards v. United States,* 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962). Accordingly, the district court properly dismissed the plaintiffs' claims for loss of consortium and emotional distress on the grounds that they could not be brought under Virginia law. Essentially, the district court employed the same principle to hold that the SSCRA cannot save Mr. Kerstetter's claim for medical expenses. Fairly unpacked, the district court reasoned as follows. First, the court observed that "[i]t is well settled that under Virginia law, a parent's claim for medical expenses incurred as a result of his child's injuries is derivative of the child's action." Second, Elizabeth's action is extinguished by operation of the two-year FTCA statute of limitations. Therefore, her father's derivative cause of action for medical expenses is also extinguished. In sum, the district court dismissed Mr. Kerstetter's claim for medical expenses not, as the government avers, because it held that the SSCRA does not apply to derivative claims, but for the logically prior reason that Mr. Kerstetter was left without a state law cause of action to proceed upon.[1]

### A.

■ We are convinced that the district court's major premise is in error. The three cases that it relied upon (like others cited by the Government) involve two situations. Two hold that a parent's claim for medical expenses and the child's primary claim for damages are not separate claims for pur-

---

1. More precisely, after establishing that actions for medical expenses are derivative under Virginia law, the district court cited *Romero v. United States,* 806 F.Supp. 569, 581 (E.D.Va.1992). *aff'd,* 2 F.3d 1149 (4th Cir.1993), for the proposition that "a derivative cause of action is extinguished when the primary cause of action fails for lack of subject matter jurisdiction." We do not under-

stand the basis for either court's conclusion that extinction of the minor's own claim would have produced a defect in subject matter jurisdiction. It seems to us that under the district court's own reasoning, its dismissal would have been for Kenneth Kerstetter's failure to state a claim under state law, not for lack of subject matter jurisdiction.

poses of a statutory cap on damages in medical malpractice claims. *Bulala v. Boyd,* 239 Va. 218, 389 S.E.2d 670 (1990); *Starns v. United States,* 923 F.2d 34, 37 (1991). The third case held—even less remarkably—that where there can be no recovery on a primary claim because the defendant is found not to have breached a duty to the plaintiff, a derivative claim that logically relies upon the defendant's negligence cannot succeed. *Norfolk S. Ry. Co. v. Fincham,* 213 Va. 122, 189 S.E.2d 380 (1972); *see also Speet v. Bacaj,* 237 Va. 290, 377 S.E.2d 397 (1989). The logic of these decisions does not necessarily establish the broader proposition that a claim for medical expenses is "derivative" for all purposes. To the contrary, *Bulala's* express invocation of the ancient "mischief rule" of statutory construction, which requires that every statute be read "so as 'to remedy the mischief at which it is directed,'" 389 S.E.2d at 674, indicates that the relationship between a parent's claim for medical expenses and the child's claim to recover damages for personal injuries varies depending upon the particular context. Happily, we need not determine whether the former claim *should be* derivative of the latter for statute of limitations purposes, for Virginia statutory law clearly reveals that it is not. In particular, Virginia provides for a two-year statute of limitations for personal injuries, Va.Code § 8.01–243 A (1992), which is tolled during minority, § 8.01–229A(1), and for a five-year statute on the parent's claim for medical expenses, § 8.01–243 B. *See Hutto v. BIC Corp.,* 800 F.Supp. 1367, 1372 (E.D.Va.1992) (noting that a child's claim for personal injuries and her parents' claims for medical expenses are treated as distinct claims for statute of limitations purposes). This does not mean, of course, that Mr. Kerstetter had five years in which to bring his claim. As we have explained above, the limitations period for suits brought under the FTCA is provided by federal law. It does demonstrate, though, that under Virginia law, a parent's claim for medical expenses is not rendered invalid just because the child's claim for damages is time-barred—notwithstanding that the medical-expense claim is "derivative" for other purposes, such as statutory liability caps.

The foregoing discussion is, we believe, sufficient to dispose of the instant issue. The SSCRA tolls "any action or proceeding in any court ... by or against any person in military service." It is uncontested both that Kenneth Kerstetter was in military service for the relevant period and that Virginia law provided him with a cause of action to recover medical expenses that resulted from medical malpractice. We have concluded that, under Virginia law, the extinction by reason of the statute of limitations of a child's claim for personal injury does not itself extinguish her parent's cause of action for medical expenses.[2] Therefore, SSCRA's plain language requires that we hold that it tolled the running of the FTCA's statute of limitations on Kenneth Kerstetter's claim for medical expenses and, consequently, that his claim was timely filed.

### B.

Despite the SSCRA's plain language, the government advances two policy arguments in support of its contention that the SSCRA should not be construed to toll the FTCA statute of limitations on Mr. Kerstetter's claim for medical expenses even if his claim technically survives under state law. The government argues, first, that allowing Mr. Kerstetter's claims for medical expenses to proceed "would not further the purposes of the SSCRA" and, second, that it "would undermine the purposes of the FTCA's two-year statute of limitations." Even were we to accept that the plain language of the SSCRA might succumb to compelling reasons of policy, we nonetheless find the government's arguments unpersuasive.

---

2. We emphasize that, because we have concluded that, under Virginia law, a parent's claim for medical expenses is *not* derivative of her child's claim for personal injury for statute of limitations purposes, we need not and do not address the question whether Kenneth Kerstetter's claim for medical expenses would be saved by the SSCRA tolling provision were state law to provide that parents' claims *are* derivative for limitations purposes. We believe that that question is considerably more difficult than the one presented.

### 1.

The government offers two reasons why application of the SSCRA to toll Kenneth Kerstetter's claims for medical expenses would not further the Act's purpose of enabling "persons serving in the armed forces to devote their entire energy to the defense needs of the Nation without the worries and distractions which are involved in the conduct of litigation." *Carr v. United States,* 422 F.2d 1007, 1012 (4th Cir.1970) (internal quotations omitted). "First, where a parent has a derivative claim arising from his child's primary claim, the parent already will be distracted by having to present his child's claim within the two-year statute of limitations." United States Brief, at 35. "Therefore, allowing Mr. Kerstetter to delay filing his own suit for his daughter's medical expenses would not serve the purposes of the SSCRA." *Id.* at 36. Second, Pamela Kerstetter, Kenneth's wife and Elizabeth's mother, "could have protected the parents' claim for their daughter's medical expenses by filing that claim within the FTCA's two year statute of limitations." *Id.* Because Pamela is a civilian, the government concludes, the goals of the SSCRA would not be advanced by relieving her of that obligation.

As to the first rationale, we can only say that it is inconceivable to us that Congress could have intended that tolling under the SSCRA should turn on whether a service-member is already distracted by other concerns than the need to litigate personal claims.

As for the government's second rationale, we think it equally inconceivable that Congress could have intended that tolling under the SSCRA should turn on whether and to what degree a service-member can rely on others to pursue litigation in his behalf. Here, for example, we cannot believe that Congress intended that tolling should never be available when a service-member's spouse could have brought a joint-claim. Even less can we believe that Congress intended that courts should condition tolling on case-by-case fact-bound inquiries into the degree to which the ability of a civilian spouse to prosecute a particular joint claim may have sufficiently relieved the normal distraction of the service-member from being able to "devote his entire energy to the defense needs of the Nation."

### 2.

The government's second policy argument—that application of SSCRA to claims for medical expenses would undermine FTCA—is even less convincing than its first. That application of the tolling provision in this context runs counter to the purposes of FTCA is simply a truism. Application of every tolling provision in every context runs counter to the purposes of the statute of limitations which it tolls. Tolling provisions reflect a legislative judgment, for whatever reason, to provide some relief from the "harsh medicine" that is a statute of limitations. When confronted with a tolling provision whose application to a given context is ambiguous,[3] inquiry should focus only on whether the purposes of the tolling provision would be advanced by a given application. That the purposes of the statute of limitations would be frustrated can be taken for granted. Therefore, the fact that application of the SSCRA to toll the FTCA's statute of limitations on Kenneth Kerstetter's claim for medical expenses would frustrate the purposes of that statute of limitations in no way undermines our conclusion that the plain language of the SSCRA directs precisely that result.

### IV.

For the foregoing reasons, we hold that the district court properly found that all causes of action accrued by July 1987. Therefore, all causes of action became time-barred two years later unless running of the FTCA's statute of limitations was tolled by the SSCRA. Because the SSCRA does not toll the independent claims of dependents of

---

**3.** That is not to say, though, that we find application of the SSCRA in the present circumstances to be ambiguous. We do not. *See, e.g., Ricard v. Birch,* 529 F.2d 214, 217 (4th Cir.1975) ("The tolling statute is unconditional. The only critical factor is military service; once that circumstance is shown, the period of limitations is automatically tolled for the duration of the service...."); *Mason v. Texaco Inc.,* 862 F.2d 242, 245 (10th Cir.1988).

covered service-members, we affirm the district court's dismissal of Elizabeth Kerstetter's claims on statute of limitations grounds. However, the district court's conclusion that Kenneth Kerstetter's claim for medical expenses was "derivative" under Virginia law, and thus extinguished, was in error. For statute of limitations purposes, Kenneth Kerstetter's claim was independent of his daughter's personal injury claims. Therefore, the SSCRA tolled running of the statute of limitations until Kenneth's severance from the armed forces in January 1992, making his August 1992 administrative complaint timely. Consequently, we reverse the district court's dismissal of Kenneth Kerstetter's claim for medical expenses. We remand for further proceedings consistent with this opinion.

*SO ORDERED.*