[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 22, 2009
THOMAS K. KAHN
CLERK

_____

No. 09-10383
Non-Argument Calendar

_____

D. C. Docket No. 07-00496-CV-ORL-18DAB

SOPHIA T. CHASTEEN,
Individually, and as Personal
Representative of the Estate of Mandy
Lee Lizzi, deceased,

Plaintiff-Appellant,

versus

UNITED STATES OF AMERICA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(June 22, 2009)

Before CARNES, WILSON and KRAVITCH, Circuit Judges.

PER CURIAM:

Sophia Chasteen, individually and as the representative of the estate of Mandy Lee Lizzi, brought this wrongful death action against the United States, alleging Lizzi's death resulted from mistreatment of her diabetes. Chasteen appeals the dismissal of her complaint as time-barred. We agree that this cause of action accrued more than two years before a claim was filed with the appropriate U.S. agency and affirm.

## BACKGROUND

According to the complaint, Lizzi was treated for her diabetes by Dr. Michael Ham-Ying at Community Health Centers, Inc., a federally-supported health center. Dr. Ham-Ying treated Lizzi from November 2002 until her last appointment on April 15, 2004. The General Statement of Plaintiff's Case in the Joint Pretrial Statement stated that Lizzi suffered repeated episodes of hypoglycemia while under the care of Dr. Ham-Ying. Lizzi died on May 23, 2004 at age 37. Dr. Ham-Ying wrote on the death certificate that the cause of death was an "Acute Myocardial Infarction due to Diabetes Mellitus Type II."

The Concise Statement of Facts Which Are Admitted in the Joint Pretrial Statement states that on the day after Lizzi's death, May 24, 2004, Lizzi's husband completed an autopsy authorization form on which he wrote, "I strongly believe my wife was taking the wrong medication or the wrong dosage, resulting in her

2

death. She was only 37 years old." The autopsy form also requested that the results be sent to Mr. Lizzi's lawyer. Additionally, on either May 23 or May 24, Mr. Lizzi told his mother, Sophia Chasteen, the appellant herein, that "That doctor killed my wife" meaning Dr. Ham-Ying. On July 20, 2004, Mr. Lizzi's lawyer requested Lizzi's medical records from Dr. Ham-Ying.

The autopsy report was completed on August 15, 2004. The report stated that the cause of death was "acute cerebral edema with probable hypoglycemic reaction complicating diabetes mellitus."

Pursuant to Florida law, Mr. Lizzi and his lawyer filed a petition for an automatic 90-day extension of the statute of limitations for medical malpractice actions with the Orange Count Circuit Court, Florida on February 2, 2006.[1]

On June 27, 2006, Mr. Lizzi sent a Notice of Intent to Initiate Litigation to Dr. Ham-Ying and Community Health Centers. This notice is required to initiate litigation of malpractice claims under Florida law. FLA. STAT. § 766.106(2)(a). Dr. Ham-Ying's office acknowledged receipt on July 7, 2006, and requested a 45-day extension to respond. On August 10, the U.S. Department of Health and

---

[1] The document is dated January 30, 2006 and the file stamp, although difficult to read, appears to state that the petition was filed February 1. Appellant's brief to this court states that the petition was filed February 2. As the difference between February 1 and February 2 is not important for this appeal, we use the February 2, 2006 date.

Human Services ("HHS") sent Mr. Lizzi instructions on how to file a claim against the United States under the Federal Tort Claims Act (the "FTCA"). On August 21, 2006, HHS received the Administrative Claim for Damage, Injury or Death submitted by Appellant.[2] HHS denied the claim as untimely on January 16, 2007.

On March 23, 2007, Appellant filed the present lawsuit against the United States. The complaint alleged that Dr. Ham-Ying failed to appropriately diagnose and treat Lizzi's diabetes, thereby breaching his duty of care to Lizzi, directly and proximately causing her death. The complaint also named Community Health Centers as a defendant, alleging that its staff failed to appropriately treat and evaluate Lizzi's condition leading to her ultimate death.

The government filed a motion to dismiss, arguing that this claim was time-barred because HHS was not notified within two years of the date of death. The district court agreed and, because filing a claim with the appropriate U.S. agency within the statute of limitations is jurisdictional, granted the motion to dismiss.

**STANDARD OF REVIEW**

We review <u>de novo</u> a dismissal for lack of subject matter jurisdiction. <u>Broward Gardens Tenants Ass'n v. EPA</u>, 311 F.3d 1066, 1072 (11th Cir. 2002).

---

[2] Lizzi's husband died on August 29, 2006 of injuries sustained years earlier. Sophia Chasteen, the Appellant and Mr. Lizzi's mother, is now the guardian of the Lizzis' children and the representative of Lizzi's estate.

## DISCUSSION

*Accrual of Claim*

A tort claim brought against the United States "is barred unless it is presented in writing to the appropriate federal agency 'within two years after such claim accrues.'" United States v. Kubrick, 444 U.S. 111, 113 (1979) (quoting the FTCA, 28 U.S.C. § 2401(b)). The failure to timely present an administrative grievance to the appropriate federal agency within two years is a jurisdictional bar to litigation in federal court. Dalrymple v. United States, 460 F.3d 1318, 1325-26 (11th Cir. 2006).

The question in this case is when this two-year statute of limitations began to run, in other words when the claim "accrued." Generally, the FTCA statute of limitations period begins to run when the plaintiff is injured. United States v. Kubrick, 444 U.S. 111, 120 (1979). In medical malpractice cases, however, where the plaintiff might not connect the injury to a cause until some later time, the claim accrues when the plaintiff discovers "both his injury and its cause." Id.; Price v. United States, 775 F.2d 1491, 1493 (11th Cir. 1985) ("Thus, a medical malpractice claim under the FTCA accrues when the plaintiff is, or in the exercise of reasonable diligence should be, aware of both her injury and its connection with some act of the defendant."). This principle has been extended to wrongful death

5

claims under the FTCA, and such a claim accrues "when the plaintiff knows, or exercising reasonable diligence should know, both of the decedent's death and its causal connection with the government." Diaz v. United States, 165 F.3d 1337, 1340 (11th Cir. 1999).

Here, Appellant argues that the causal connection between Lizzi's death and the acts of Dr. Ham-Ying was not known until the autopsy was completed on August 15, 2004. The government argues that the claim accrued on the date of Lizzi's death because it was clear that Lizzi's husband was on reasonable notice of a link to Dr. Ham-Ying at that time. Although this is a close case, we agree with the government.

This court has declared that a claim accrues when the plaintiff knows that the injury is connected to "some act of those who treated her," but the plaintiff need not know at that time "the particular acts that resulted in her injury." Price, 775 F.2d at 1493-94. The Supreme Court has held that a medical malpractice claim under the FTCA accrues at the time the plaintiff is aware of the injury and learns of the probable cause of the injury. Kubrick, 444 U.S. at 118, 122. Additionally, the plaintiff need not be aware that the connection indicates some kind of negligence; rather, he or she must simply be aware of the existence of a connection. Id. at 123 ("We thus cannot hold that Congress intended that 'accrual'

6

of a claim must await awareness by the plaintiff that his injury was negligently inflicted. A plaintiff . . . armed with the facts about the harm done to him, can protect himself by seeking advice in the medical and legal community."); Diaz, 165 F.3d at 1340 ("The notice must be not of harm but of iatrogenic [doctor-caused] harm, though as Kubrick holds, not necessarily of negligent iatrogenic harm.") (quoting Drazan v. United States, 762 F.2d 56, 59 (7th Cir. 1985)). The two-year statute of limitations allows the plaintiff to investigate, confer with other medical professionals to assess whether there has been negligence, and decide whether to sue. Kubrick, 444 U.S. at 124; Price 775 F.2d at 1494. This period is not simply for the plaintiff to decide whether to sue after having collected all relevant evidence.

Here, Appellant and her predecessor as the estate representative, Mr. Lizzi, suspected that Lizzi's death was caused by Dr. Ham-Ying's mistreatment of her diabetes and the resulting hypoglycemia long before the issuance of the autopsy report. Lizzi had a history of hypoglycemic episodes while being treated by Dr. Ham-Ying. Also, Mr. Lizzi stated to his mother that "That doctor killed my wife." In fact, it was this belief that Dr. Ham-Ying had caused Lizzi's death that led Mr. Lizzi to request the autopsy report; he wrote on the autopsy form, "I strongly believe my wife was taking the wrong medication or the wrong dosage, resulting

7

in her death." This evidence demonstrates that the Appellant and her predecessor were aware of the injury and the potential causal connection with her treatment by Dr. Ham-Ying and Community Health Centers. The autopsy in this case did not serve to inform Appellant of the causal connection, but rather confirmed what they already believed – that Lizzi's death may have resulted from Dr. Ham-Ying's failure to control over her diabetes.[3] The autopsy was not a critical disclosure of an unknown link; rather it was merely a piece of evidence to support Appellant's general allegations that Lizzi's ongoing treatment in the years before her death was improper and contributed to her death. In such circumstances, we must conclude that the autopsy did not announce the causal link between the injury and the actions of Dr. Ham-Ying but rather confirmed it.

This case is very different from <u>Kubrick</u> wherein the plaintiff experienced a loss of hearing as the result of treatment of a surgical wound on his leg. 444 U.S. at 113-14. The plaintiff had no idea that the treatment could in any way be connected to hearing loss until a specialist informed him of the possibility. <u>Id.</u> at 114. In <u>Kubrick,</u> the claim did not accrue until the plaintiff was aware of a

---

[3] We recognize that in other cases, the claim may very well accrue on the date of the release of the autopsy report rather than the date of death. This, however, is not a case where an autopsy revealed some unknown and unsuspected iatrogenic cause of injury or where a surviving spouse merely suspected that something was amiss and requested an autopsy which disclosed a link between the doctor's actions and the death.

8

possible connection between the hearing loss and the medical treatment he received years earlier for leg surgery. Id. at 122-23. Also, in Diaz, the plaintiff's husband committed suicide while incarcerated. 165 F.3d at 1338. Prior to the suicide, medical and psychology service staff members at the hospital had evaluated Diaz and learned that he was suffering from depression and having suicidal thoughts and yet had not counseled Diaz or initiated a suicide watch. Id. His wife however, had no idea that he was having such thoughts or that prison officials were aware of the situation. Id. Thus, her claim did not accrue until she was put on notice or would have known through reasonable diligence that the government's inactions may have contributed to her husband's death. Id. at 1340.

Here, Appellant and Mr. Lizzi were aware that Lizzi was being treated by Dr. Ham-Ying and that her diabetes was poorly controlled under his care. Mr. Lizzi immediately made a connection between Dr. Ham-Ying's treatment and Lizzi's death. Thus, Appellant cannot say that there was no notice of a connection between the death and some act of the defendant until the autopsy report issued. We, therefore, agree with the district court that this wrongful death claim accrued on the date of Lizzi's death, rather than when the autopsy report was issued.

*Equitable Tolling*

Appellant argues that if the claim accrued before the release of the autopsy report, the statute of limitations should be tolled from the submission of the Notice of Intent to Initiate Litigation to Dr. Ham-Ying's office on June 7, 2006.[4] Appellant contends that the delay between that date and the presentation of the claim to HHS was due to the lack of awareness that the Community Health Centers was federally-funded and that the U.S. government was the proper defendant. This argument, however, does not help Appellant because, as stated above, the statute of limitations period had already ended on May 23, 2006, two years from the date of Lizzi's death. Regardless of whether the Notice of Intent sent to Dr. Ham-Ying would toll the limitations period from June 7, 2006 until HHS received the administrative claim on August 21, 2006, the statute of limitations period already ended before the Notice of Intent was sent.[5]

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the dismissal for lack of jurisdiction.

---

[4] Appellant does not argue that the statute of limitations should be tolled from the date that she filed the state petition for a 90-day extension of the statute of limitations with the Florida state court on February 2, 2006. We, therefore, do not address that as a possibility.

[5] Because the statute of limitations period had already run before the asserted equitable tolling would have begun if applicable, we need not address whether the FTCA allows tolling.