**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 14-1217**

_____

JOHN DAVID RAPLEE, JR.,

        Plaintiff - Appellant,

    v.

UNITED STATES OF AMERICA,

        Defendant - Appellee.

-------------------------------------

MARYLAND ASSOCIATION FOR JUSTICE,

        Amicus Supporting Appellant.

_____

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Paul W. Grimm, District Judge. (8:13-cv-01318-PWG)

_____

Argued: October 25, 2016        Decided: November 22, 2016

_____

Before NIEMEYER and MOTZ, Circuit Judges, and DAVIS, Senior Circuit Judge.

_____

Affirmed by published opinion. Judge Motz wrote the opinion, in which Judge Niemeyer and Senior Judge Davis joined.

_____

**ARGUED**: L. Palmer Foret, ASHCRAFT & GEREL, LLP, Rockville, Maryland, for Appellant. Neil R. White, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for Appellee. **ON BRIEF**: Wayne Mansulla, Peter T. Anderson, ASHCRAFT & GEREL, LLP,

Rockville, Maryland, for Appellant. Rod J. Rosenstein, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee. Michael J. Winkelman, MCCARTHY & WINKELMAN LLP, Lanham, Maryland, for Amicus Curiae.

———————

DIANA GRIBBON MOTZ, Circuit Judge:

John Raplee challenges the dismissal of his Federal Tort Claims Act ("FTCA") complaint as untimely. In compliance with state law, Raplee initially filed a medical malpractice claim with Maryland's alternative dispute resolution agency. Although he filed with the state agency within the FTCA's limitations period, he did not file a complaint in federal court until well after that period had passed. Raplee contends that by filing a required state administrative claim, an "action is begun" for the purposes of the FTCA's limitations period. 28 U.S.C. § 2401(b) (2012). Alternatively, he asserts that equitable tolling principles excuse his failure to comply with the limitations period. Because an "action is begun" under the FTCA only by filing a civil action in federal district court, Raplee's claim was untimely. Further, he has not demonstrated any extraordinary circumstances warranting equitable tolling. Accordingly, we affirm the judgment of the district court.

I.

In September 2006, Raplee underwent surgery at the National Institutes of Health, an operating division of the United States Department of Health and Human Services ("HHS"). Raplee alleges that the surgeons "negligently position[ed]" him while he was

3

under anesthesia, resulting in permanent damage to the muscles and nerves in his left foot.

The FTCA renders the United States liable for the torts of its employees, including the surgeons in this case, "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. The FTCA requires a plaintiff pursuing a tort claim to follow a multi-step process. First, a plaintiff must file his claim with the appropriate federal agency, which then has the power to settle or deny it. 28 U.S.C. §§ 2401(b), 2675(a). The plaintiff may file a civil action against the United States only if the agency has denied the claim. 28 U.S.C. § 2675(a).

In November 2006, Raplee retained the law firm Ashcraft & Gerel, LLP to represent him in his medical malpractice claim against the United States. On September 16, 2008, Ashcraft & Gerel, through Martin Trpis, filed Raplee's claim with HHS.

Trpis had left Ashcraft & Gerel by May 2010 while Raplee's claim was still under administrative review at HHS. Although lawyers from the firm continued to represent Raplee, no one notified HHS of Trpis's departure, and no other attorney from Ashcraft & Gerel filed an appearance with HHS.

On June 19, 2012, HHS mailed its notice of final denial by certified letter to Trpis at Ashcraft & Gerel. Section 2401(b) of the FTCA bars any tort claim against the United States unless

4

the "action is begun within six months" after the federal agency mails notice of its denial of the claim. 28 U.S.C. § 2401(b). Therefore, Raplee had until December 19, 2012 to begin an action pursuant to the FTCA.

The letter HHS sent to Trpis at Ashcraft & Gerel was returned to HHS as undeliverable. The envelope containing the letter was stamped "Returned to Sender" with a handwritten note explaining that Trpis was "no longer at this company." HHS confirmed that it had sent the letter to the correct address, but it made no further attempt to send notice of its denial. The record contains no evidence that Raplee, Trpis, or anyone else inquired as to the status of Raplee's claim.

Because the FTCA merely waives sovereign immunity to make the United States amenable to a state tort suit, the substantive law of the state where the tort occurred determines the liability of the United States. 28 U.S.C. § 1346(b)(1); see, e.g., Levin v. United States, 133 S. Ct. 1224, 1228 (2013). Accordingly, as the parties agree, Maryland plaintiffs wishing to bring medical malpractice claims against the United States under the FTCA must comply with Maryland's pre-filing requirements.

On November 8, 2012, Raplee, represented by an Ashcraft & Gerel lawyer (but not Trpis), filed a claim with Maryland's Health Care Alternative Dispute Resolution Office. Under

Maryland law, a plaintiff must submit a medical malpractice claim to this state agency before filing the claim in court. Md. Code Ann., Cts. & Jud. Proc. § 3-2A-02(a), -04(a)(1)(i) (West 2016). A plaintiff must then submit an expert report certifying that the claim is meritorious within ninety days. Id. § 3-2A-04(b)(1)(i)(1). Once a claimant has submitted an expert report, he may waive arbitration and proceed to court. Id. § 3-2A-06B(a).

Although Raplee filed his initial claim with the Maryland agency in November 2012 -- approximately one month before the FTCA filing deadline in December 2012 -- he did not file his expert report until February 2013. And he did not waive arbitration until March 2013. Raplee finally filed a complaint with the federal district court on May 3, 2013 -- nearly five months after expiration of his time to begin an action under § 2401(b).

The United States moved to dismiss Raplee's claim for lack of subject matter jurisdiction. The district court granted the motion because, at the time, we considered the FTCA's limitations period to be jurisdictional. See, e.g., Gould v. U.S. Dep't. of Health & Human Servs., 905 F.2d 738, 741–42 (4th Cir. 1990) (en banc). On appeal, we held the case in abeyance while the Supreme Court resolved that very issue. In United States v. Kwai Fun Wong, 135 S. Ct. 1625, 1629 (2015), the Court

6

held that the FTCA's limitations period is <u>not</u> a jurisdictional rule but a claims-processing rule that allows for equitable tolling. In light of this decision, we remanded Raplee's case so that the district court could decide whether Raplee was entitled to equitable tolling. The district court concluded that he was not, reasoning that Raplee failed to show that extraordinary circumstances had prevented him from filing in a timely manner.

On appeal, Raplee contends that his claim was timely because, by filing his claim with the <u>state</u> agency, an "action [was] begun" under § 2401(b) of the FTCA. He also contends that, even if his claim was untimely, he is entitled to equitable tolling. We consider these arguments in turn.

II.

In order to determine whether Raplee's claim was timely, we must decide when an "action is begun" under § 2401(b). We review questions of statutory interpretation <u>de novo</u>. <u>Stone v. Instrumentation Lab. Co.</u>, 591 F.3d 239, 242-43 (4th Cir. 2009).

When construing a statute, we start with its text. <u>Lamie v. U.S. Tr.</u>, 540 U.S. 526, 534 (2004). If the meaning of the text is plain -- in other words, if it bears only one reasonable interpretation -- that meaning controls. <u>Id.</u> "The plainness or ambiguity of statutory language is determined by reference to

7

the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997).

The word "action" in § 2401(b) has only one reasonable meaning: it refers to a federal civil action. The language of the statute and the context in which it occurs confirm this.

"Action" has a settled technical meaning in the law: "action" means a lawsuit. See Black's Law Dictionary 49 (4th ed. 1951) ("The legal and formal demand of one's right . . . in a court of justice."). This meaning of "action" has an ancient lineage. See Ex parte Milligan, 71 U.S. (4 Wall.) 2, 112-13 (1866) ("In any legal sense, action, suit, and cause, are convertible terms" and "[i]n law language a suit is the prosecution of some demand in a court of justice." (quoting Cohens v. Virginia, 19 U.S. (6 Wheat.) 264, 407 (1821))).

Moreover, the Supreme Court settled any question about the term's current meaning when the Court promulgated the Federal Rules of Civil Procedure in 1938. The Federal Rules famously abolished distinctions between various types of judicial proceedings -- like the distinction between "actions at law" and "suits in equity" -- by announcing that "[t]here shall be one form of action to be known as 'civil action.'" Fed. R. Civ. P. 2 (1938). The Advisory Committee made clear that this innovation in terminology sought to bring uniformity both to

8

federal civil procedure and the United States Code. Id. advisory committee's note to 1937 adoption ("Reference to actions at law or suits in equity in all statutes should now be treated as referring to the civil action prescribed in these rules.").

Congress adopted the language of § 2401(b) against this backdrop, and the statutory context supports the conclusion that all references to "action" in the FTCA refer to a judicial civil lawsuit. For example, § 2401(a) -- the text immediately preceding § 2401(b) -- provides that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years." 28 U.S.C. § 2401(a) (emphases added). The next sentence provides an exception: "The action of any person under legal disability or beyond the seas at the time the claim accrues may be commenced within three years after the disability ceases." Id. (emphasis added). As another example, § 2402 provides that "any action against the United States under section 1346 shall be tried by the court without a jury." Id. § 2402 (emphases added).

Thus, both the text and statutory context indicate that the word "action" in § 2401(b) refers only to a civil action filed in court. Common sense recommends this understanding all the more strongly when considering a statute of limitations, the

9

very purpose of which is to identify the deadline for filing a lawsuit in court.

The references to § 1346 in the FTCA confirm that the only type of civil action contemplated by § 2401(b) is a <u>federal</u> civil action. <u>See</u> 28 U.S.C. § 1346(b)(1). There can be no doubt that a plaintiff begins an action under the FTCA by bringing "[a] tort claim against the United States." 28 U.S.C. § 2401(b). But the federal district courts have <u>exclusive</u> jurisdiction over these claims. 28 U.S.C. § 1346(b)(1). Thus, a plaintiff cannot satisfy the FTCA's limitations period by filing an action with a state agency that lacks jurisdiction over such an action.

Raplee seeks to ignore all of this statutory language. He proposes that an "action is begun" under the FTCA as soon as a plaintiff takes some required step toward pursuing a tort claim against the United States. But that would mean Congress enacted a statute of limitations that says nothing specific about what a plaintiff must do to satisfy the limitations period and nothing at all about when a plaintiff's time to file a complaint in federal court elapses. This would make no sense.

In sum, § 2401(b) requires a plaintiff to bring a federal civil action within six months after a federal agency mails its notice of final denial of his claim. Of course, the only way to begin a federal civil action is by filing a complaint with a

10

federal district court. Fed. R. Civ. P. 3. Raplee did not file his complaint with the district court within the six-month limitations period, and therefore his complaint was untimely.

## III.

Even so, Raplee contends that the district court erred in refusing to consider his case by tolling the limitations period. In a non-habeas context like this, we generally review denials of equitable tolling for abuse of discretion. Rouse v. Lee, 339 F.3d 238, 247 n.6 (4th Cir. 2003) (en banc). But see Cruz v. Maypa, 773 F.3d 138, 143 (4th Cir. 2014) (noting that in some circumstances review is de novo).

Plaintiffs are entitled to equitable tolling only if they show that they have pursued their rights diligently and extraordinary circumstances prevented them from filing on time. See Holland v. Florida, 560 U.S. 631, 649 (2010). We have explained that equitable tolling is reserved for "those rare instances where -- due to circumstances external to the party's own conduct -- it would be unconscionable to enforce the limitation period against the party and gross injustice would result." Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000). The district court concluded that Raplee failed to demonstrate that extraordinary circumstances prevented him from

11

filing on time.  Raplee asserts that the court erred for two reasons.

A.

First, Raplee maintains that HHS wrongfully deprived him of notice that his claim had been denied by failing to send him a <u>second</u> notice.  This, he argues, constitutes an extraordinary circumstance.

Wrongful conduct by an opposing party can trigger equitable tolling.  <u>Id.</u>  However, HHS did nothing wrong in this case.  It mailed notice to Raplee's counsel of record at the address counsel had provided -- the offices of Ashcraft & Gerel.  When the notice was returned undelivered, HHS took the extra step of confirming that it had been sent to the correct address, a step the statute does not require.  Raplee does not dispute that HHS sent the notice to the correct address, and the unrebutted record evidence shows that it arrived there.  We know of no statute or regulation that requires anything more of HHS, and Raplee has pointed to none.

Furthermore, the failure to receive the notice is largely attributable to action or inaction by past and present lawyers at Ashcraft & Gerel.  Those lawyers took no steps to ensure that Raplee's case would be handled seamlessly after Trpis left the firm.  They never notified HHS about the departure of one lawyer or the substitution of another.  When the certified letter from

12

HHS arrived at Ashcraft & Gerel's office, the letter was simply rejected without being opened.

Nothing extraordinary occurred here. This is just the type of thing that can happen when busy lawyers inadvertently fail to handle personnel changes and office mail carefully. Such conduct is unfortunately understandable; it hardly qualifies as an extraordinary circumstance. Cf. Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990) (holding that equitable tolling did not apply to an untimely action under the Civil Rights Act where the attorney was out of the country when notice arrived at his office); Rouse, 339 F.3d at 251, 253 (holding that equitable tolling did not apply to a death-row inmate's habeas petition where inmate's attorney filed one day late); Harris, 209 F.3d at 331 (holding that an attorney's misinterpretation of AEDPA's limitations period did not warrant tolling).

B.

Raplee also contends that Trpis, his original Ashcraft & Gerel attorney, abandoned him and that this constitutes an extraordinary circumstance under the Supreme Court's decision in Maples v. Thomas, 132 S. Ct. 912 (2012). This argument also fails.

In Maples, a state prisoner on death row procedurally defaulted on his habeas claim because, unbeknownst to him, his attorneys left the firm handling the case and no other attorneys

13

took over for them.  The Supreme Court held that the prisoner had demonstrated cause that excused his procedural default because his "attorney abandon[ed] his client without notice, and thereby occasion[ed] the default."  Id. at 922.

In a habeas case, like Maples, the injustice of holding a petitioner responsible for his attorneys' abandonment is obvious.  There is no redemption for habeas petitioners whose attorneys abandon them in this way.  A malpractice suit cannot compensate them for the loss of freedom -- or life itself.  For that reason, habeas cases are precisely the type of circumstance where abandonment calls for a remedy like equitable tolling.

In contrast, in a civil suit for damages, if a plaintiff misses a deadline because his attorney abandoned him, he can recover those damages from the attorney.  For this reason, the Maples rule may not apply in civil actions seeking damages.  See Choice Hotels Int'l, Inc. v. Grover, 792 F.3d 753, 755-56 (7th Cir. 2015), cert. denied, 136 S. Ct. 691 (2015) (suggesting as much and declining to apply Maples in a breach of contract case).  But see Sneed v. Shinseki, 737 F.3d 719, 728 (Fed. Cir. 2013) (applying Maples, over a dissent, to a veterans' benefits case because of "[t]he special treatment Congress reserved for veterans").

We need not -- and do not -- here resolve the reach of Maples because, even if Maples applies in civil cases, like the

14

case at hand, it does not help Raplee here.  Although the facts of this case bear some similarity to those in Maples, they differ in a crucial respect:  abandonment by his attorneys did not cause Raplee to miss the filing deadline.  Raplee's original Ashcraft & Gerel attorney left the firm in 2010, but the record offers no evidence that Ashcraft & Gerel lawyers abandoned him. On the contrary, the record clearly establishes other Ashcraft & Gerel attorneys took over Raplee's case almost two years before the Act's deadline passed in December 2012.  For example, a lawyer from the firm procured the required expert report as early as January 2011.  A lawyer from the firm continued to represent Raplee before the state agency and the district court, and a lawyer from Ashcraft & Gerel continues to represent Raplee in this appeal.  Accordingly, whatever abandonment may have occurred in this case had nothing to do with the untimely filing.

IV.

We recognize that, in some cases, state requirements like Maryland's may place unusually high burdens on FTCA plaintiffs. It takes time and effort to develop a case and secure credible expert testimony.  Moreover, there is no guarantee that a state agency will process claims swiftly enough to allow a plaintiff to file within the FTCA's limitations period.

15

There are, however, procedural devices available to mitigate the burdens of state law filing requirements. A district court has broad power to issue stays to control its docket, and it can use that power to craft a solution to such problems. For example, in a recent case where the plaintiff filed a timely federal FTCA complaint before satisfying Maryland's pre-filing requirements, Chief Judge Catherine Blake stayed the federal proceedings rather than dismiss the case. Anderson v. United States, Civ. No. CCB-08-3, 2008 WL 3307137, at *4 (D. Md. Aug. 8, 2008). This gave the plaintiff an opportunity to satisfy the state requirements without risking an untimely federal filing. (Of course, that solution was unavailable here because Raplee filed an untimely federal complaint.)

We recognize that deciding whether to stay proceedings, as Judge Blake did, "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." Landis v. N. Am. Co., 299 U.S. 248, 254–55 (1936). But in a typical case, allowing plaintiffs to file their federal complaints under the FTCA before completing state law requirements would seem to promote both the objectives of § 2401(b) and the FTCA's overall purpose of affording private citizens relief for injuries they suffer as a result of the federal government tortfeasors.

16

This is particularly true given that the FTCA's limitations period is not a jurisdictional rule but a claims-processing one. Kwai Fun Wong, 135 S. Ct. at 1638. Like other claims-processing rules, § 2401(b) "seek[s] to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." Henderson ex rel. Henderson v. Shinseki, 562 U.S. 428, 435 (2011). Plaintiffs cannot avoid this rule absent extraordinary circumstances. However, Congress did not design § 2401(b) as a gauntlet for plaintiffs to run. The statute does not require a plaintiff to complete all state law requirements before filing a complaint with the district court. Rather, a plaintiff fully satisfies the claims-processing objective by filing a complaint with the federal district court within the limitations period while simultaneously working to satisfy state law requirements.

V.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

17