**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-1642**

UNITED STATES OF AMERICA,

 Plaintiff - Appellee,

 v.

WILLIAM J. GILLIAM,

 Defendant - Appellant.

Appeal from the United States District Court for the District of South Carolina, at Charleston. Margaret B. Seymour, Senior District Judge. (2:15-cv-04064-MBS)

Argued: May 9, 2018                                      Decided: June 25, 2018

Before KING, DIAZ, and FLOYD, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Wyatt B. Durrette, Jr., DURRETTE, ARKEMA & GILL, PC, Richmond, Virginia, for Appellant. Julie Ciamporcero Avetta, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Tobias G. Ward, Jr., TOBIAS G. WARD, JR. LAW FIRM, Columbia, South Carolina, for Appellant. David A. Hubbert, Acting Assistant Attorney General, Joan I. Oppenheimer, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Beth Drake, Interim United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

The Internal Revenue Service (IRS) assessed federal income tax liability against Appellant William J. Gilliam for the 1993 and 1995 tax years. In 2015, the government sought to collect on Gilliam's outstanding tax liability. In response, Gilliam asserted that the ten-year limitations period for the assessment of taxes had expired. The government argued that the limitations period was suspended between December 2007 and September 2010 such that the limitations period had not expired before the time it moved to collect. The district court agreed, held that the government's collection action was timely, and granted summary judgment for the government.

Gilliam now appeals, arguing that the district court erred in concluding that the government brought its action within the limitations period. We hold that the district court correctly determined that the limitations period had been suspended during the operative time period. Accordingly, we affirm the district court's grant of summary judgment in the government's favor.

I.

We begin with a brief overview of the relevant statutory and regulatory framework. When a taxpayer owes the government taxes, the IRS makes an assessment which constitutes "the official recording of liability that triggers levy and collection efforts." *Hibbs v. Winn*, 542 U.S. 88, 101 (2004); *see also* 26 U.S.C. § 6203. After making an assessment, the IRS may either place a lien on the taxpayer's property or levy

the property to satisfy the debt.[1]  Typically, the IRS has ten years after making an assessment to collect through levy or judicial proceeding.  26 U.S.C. § 6502(a)(1).

The statute of limitations for collection is suspended:  (1) when "the Secretary is prohibited from making the assessment or from collecting by levy or a proceeding in court," 26 U.S.C. § 6503(a)(1); (2) if the government gives notice of intent to levy and the taxpayer requests a hearing to challenge the levy actions, 26 U.S.C. § 6330(e)(1);[2] or (3) if the government institutes a lien and the taxpayer requests a hearing to challenge the lien, 26 U.S.C. § 6320(c).

The pertinent IRS regulations further explain that once a taxpayer requests a hearing to challenge a levy or lien, the taxpayer must be afforded one of two types of hearings.  The first, a collection due process (CDP) hearing, is available only if the taxpayer's request for a hearing is timely.  26 C.F.R. § 301.6320–1(b)(1).  If the request is untimely, the taxpayer receives an equivalent hearing rather than a CDP hearing.  *Id.* § 301.6320–1(c)(2).  The Internal Revenue Code does not distinguish between CDP and

---

[1] A lien is a "legal right or interest that a creditor has in another's property, lasting usu[ally] until a debt or duty that it secures is satisfied."  *Lien*, Black's Law Dictionary (10th ed. 2014).  A tax lien is a "lien on property, and all rights to property, imposed by the federal government for unpaid federal taxes."  *Id.*  "A levy is a legal seizure of [an individual's] property to satisfy a tax debt."  IRS, What is a Levy?, https://www.irs.gov/businesses/small-businesses-self-employed/what-is-a-levy (saved as ECF opinion attachment).

[2] Subsection 6330(e)(1) states that "if a hearing is requested . . . , the levy actions which are the subject of the requested hearing and the running of any period of limitations under section 6502 . . . shall be suspended for the period during which such hearing, and appeals therein, are pending."

4

equivalent hearings; the two-track hearing system originates entirely in the regulations. *Compare* 26 U.S.C. § 6330(e), *with* 26 C.F.R. § 301.6320–1(b)(1), (c)(2)(v) ("A taxpayer is entitled to one CDP hearing with respect to the first filing of a [Notice for Tax Lien] . . . *if* the taxpayer timely requests such a hearing. . . . If the request for CDP hearing is untimely, . . . the taxpayer will be notified of the untimeliness of the request and offered an equivalent hearing." (emphasis added)). Taxpayers are afforded the same procedures during CDP and equivalent hearings, with two exceptions. *See* 26 C.F.R. § 301.6320–1(i)(1) (stating that equivalent hearings "generally will follow . . . procedures for a CDP hearing."). First, a decision letter issued at the conclusion of an equivalent hearing cannot be appealed, whereas a notice of determination issued following a CDP hearing is appealable. *See id.* § 301.6320–1(i)(1), (2). Second, the limitations period is not suspended during the pendency of an equivalent hearing, whereas a CDP hearing request suspends the limitations period. *See id.*

## II.

Having outlined the relevant statutory and regulatory structure, we now turn to Gilliam's claims. In 1995, the IRS selected Gilliam's 1993 tax return for examination, and it assessed approximately $1.5 million in additional income tax against Gilliam. In 1997, the IRS assessed another approximately $800,000 in income tax liability, including interest and penalties, against Gilliam for the 1995 tax year. In 2007, the IRS added approximately $1.1 million in interest and penalties to the 1995 assessment. As of

5

September 2016, Gilliam's liability for unpaid taxes, penalties, and interest for 1993 totaled just over $5 million and his liability for 1995 totaled approximately $2.6 million.

On November 27, 2007, the government filed a notice of federal tax lien for Gilliam's unpaid 1993 and 1995 income tax liabilities pursuant to 26 U.S.C. § 6320 in California, where Gilliam resided. The government also informed Gilliam that he had a right to a hearing under 26 U.S.C. § 6329 and that the deadline to request that hearing was January 4, 2008. Gilliam submitted a request for review of a levy, pursuant to 26 U.S.C. § 6330, which the IRS received on December 18, 2007. Because there was no levy pending against Gilliam at that time, the IRS disregarded his request. Gilliam sent a second hearing request, using IRS Form 12153, properly challenging the lien. The IRS received his second request on January 30, 2008, and deemed it untimely, but granted Gilliam an "equivalent hearing" pursuant to 26 C.F.R. § 301.6320–1.

In December 2008, the IRS Appeals Office sustained the notice of federal tax lien against Gilliam. Gilliam sought Tax Court review of the IRS Appeals Office's determination, pursuant to 26 U.S.C. §§ 6320(c) and 6330(d)(1). The government moved to dismiss for lack of jurisdiction on the grounds that Gilliam's hearing request had been untimely and that the equivalent hearing he had received could not be appealed. *See* 26 C.F.R. § 301.6320–1(i)(1), (2)

While the Tax Court considered this motion, on March 24, 2009, a bankruptcy court ruled on the IRS's attempt to collect part of Gilliam's unpaid income tax liability from a bankruptcy trust associated with Marine Energy Systems Corporation (MESC), a South Carolina corporation of which Gilliam had served as president, chief executive,

6

and majority shareholder until it entered into bankruptcy in 1996. Gilliam was to receive funds from the bankruptcy trustee pursuant to a settlement agreement associated with the bankruptcy. In May 2007, the IRS tried to collect Gilliam's unpaid income tax liability by serving a notice of levy on the trustee. The South Carolina Department of Revenue filed a competing claim, and an adversary proceeding was held to resolve the dispute. The proceeding concluded in 2009 and the bankruptcy court ordered the trustee to distribute all funds that would be payable to Gilliam to the IRS. In total, the government collected $614,000 from the trustee on Gilliam's 1993 and 1995 assessed taxes.

On September 15, 2010, the Tax Court denied the government's motion to dismiss Gilliam's appeal regarding the lien action. It reasoned that despite its references to 26 U.S.C. § 6330, Gilliam's December 2007 hearing request had been an attempt to request review of the lien action against him. It further reasoned that despite the incomplete nature of this initial hearing request, Gilliam's January 2008 request clarified his intent. As a result, the Tax Court determined that Gilliam's request for a hearing had been timely, citing 26 C.F.R. § 301.6320–1(c)(2)(v) for the proposition that an imperfect written request for a CDP hearing is "timely if the request is perfected within a reasonable period of time[.]" J.A. 87. The Tax Court adjudicated the merits of Gilliam's appeal, and in 2012 entered summary judgment in favor of the government, holding that the lien against Gilliam was proper and that the government could proceed with the collection action for the 1993 and 1995 tax years. Gilliam appealed the Tax Court's

7

determination to the Ninth Circuit. The Ninth Circuit dismissed his appeal on March 13, 2013, for failure to prosecute.[3]

On September 30, 2015, the government filed an action in the United States District Court for the District of South Carolina, seeking to bring Gilliam's unpaid income tax liabilities for 1993 and 1995 to judgment. Gilliam opposed the collection, claiming that the action was untimely because the ten-year statute of limitations had run. The government argued that the limitations period had been suspended for a period of years due to Gilliam's timely request for a lien hearing in 2007, among other things. The new limitations deadlines, it asserted, were November 2015 and June 2016 for the 1993 and 1995 tax years, respectively. Gilliam responded that between December 2007, the date of his request for a CDP hearing, and September 2010, the date that the Tax Court ruled his CDP request timely, the statute of limitations was not suspended. As a result, he claimed the limitations period for both tax years expired in 2013 and that the government's collection action was therefore untimely. Specifically, he argued that the limitations period is only suspended when the government is prohibited from collecting, and that the government's collection of $614,000 from the MESC trustee during the 1,003-day period between December 2007 and September 2010 demonstrated that the government had the ability to collect such that the statute of limitations was not

---

[3] A case is dismissed for failure to prosecute when "the plaintiff has failed to pursue the case diligently toward completion." *Dismissal*, Black's Law Dictionary (10th ed. 2014).

8

suspended.[4]  He also claimed that the limitations period was not suspended because he actually received an equivalent hearing, which does not suspend the limitations period, rather than a CDP hearing, which would have suspended the limitations period.

The district court disagreed.  The court rejected Gilliam's argument that the government's collection of funds after his hearing request nullified the suspension of the limitations period and held that 26 U.S.C. § 7433, which provides that a taxpayer may bring a civil action if the IRS disregards the tax code, was Gilliam's only avenue for remedying any potential injury stemming from that collection.  The court also determined that because Gilliam received the benefit of an appeal to the Tax Court despite receiving an equivalent hearing, which typically cannot be appealed, Gilliam was foreclosed by judicial estoppel from asserting a statute of limitations defense against the government. It reasoned that the remedy Gilliam sought was fundamentally unfair, as it would allow him the advantage of an appeal to the Tax Court as well as the running of the statute of limitations.

Gilliam timely appealed to this Court, arguing the district court erred in granting the government's summary judgment motion.  For the reasons that follow, we affirm.

III.

---

[4] Gilliam does not dispute that the limitations period was tolled for the 910 days between the Tax Court's jurisdictional ruling and the dismissal of his appeal by the Ninth Circuit on March 13, 2013.

This Court reviews questions of statutory interpretation de novo. *Raplee v. United States*, 842 F.3d 328, 331 (4th Cir. 2016). It likewise reviews the district court's grant of summary judgment de novo. *Cox v. SNAP, Inc.*, 859 F.3d 304, 307 (4th Cir. 2017).

The issue before us is whether the ten-year statute of limitations period was suspended between December 2007, when Gilliam mistakenly requested a CDP hearing for review of a nonexistent levy, and September 2010, when the Tax Court determined his initial request was intended to request review of the lien and was therefore timely. If the limitations period was suspended, the government's collection action was timely. If not, the government cannot collect.

A.

Gilliam first argues that together §§ 6503 and 6330, as incorporated by § 6320, suspend the limitations period only when the government is prohibited from collecting. Thus, because the government collected $614,000 from the MESC trustee while Gilliam's lien appeal was pending, he asserts that the limitations period cannot have been suspended between 2007 and 2010.

Gilliam's emphasis on the intersection of §§ 6503 and 6330 is misplaced. The collection of funds from the MESC trustee pursuant to a levy is unrelated to the question of whether the limitations period was suspended while Gilliam's lien hearing request and appeal were pending because the collection from the MESC trustee was pursuant to a § 6330 levy action separate and apart from the § 6320 lien action at issue in this case.

10

Although lien and levy actions are similar, they are legally distinct. This distinction is evidenced by the fact that liens and levies are controlled by separate portions of the Tax Code and regulations. *See* 26 U.S.C. §§ 6320, 6330. In fact, the language of § 6320 contemplates the possibility of the collection of a levy occurring concurrent to a lien action. 26 U.S.C. § 6320(c) (incorporating § 6330(e) "[f]or purposes of [§ 6320(e)]" i.e., solely for the purposes of lien actions); *see also* Treas. Reg. § 301.6320–1(g)(2), A3 ("Levy actions . . . are not the subject of a CDP hearing under section 6320. The IRS may levy for tax periods and taxes covered by the CDP Notice under section 6320 and for other taxes and periods if the CDP requirements under section 6330 for those taxes and periods have been satisfied."). Accordingly, although 26 U.S.C. § 6503(g) suspends the limitations period when the government is prohibited from collecting "by levy or a proceeding in court," the government was not prohibited from collecting by levy between 2007 and 2010. Thus, § 6503 does not require suspension of the limitations period between 2007 and 2010. Indeed, § 6503 is wholly irrelevant to our analysis of whether the limitations period was suspended during the operative time period.

Instead, the relevant statutory provision is § 6320 and its incorporation of § 6330.[5] Section 6320 provides that a taxpayer has a "[r]ight to fair hearing" if "the person

---

[5] Because the collection from MESC was pursuant to a separate levy action, we agree with the district court that if the collection was unlawful, Gilliam's only remedy is damages under 26 U.S.C. § 7433. *Id.* ("If, in connection with any collection of Federal tax . . . any officer or employee of the Internal Revenue Service recklessly or intentionally, or by reason of negligence, disregards any provision of this title, . . . such (Continued)

11

requests a hearing in writing under subsection (a)(3)(B) and states the grounds for the requested hearing," and that the taxpayer is "entitled to only one hearing" per tax period in front of an impartial officer. 26 U.S.C. § 6320(b). Section 6320 also incorporates the portions of § 6330 dealing with suspension of the limitations period. Specifically, it incorporates the language that "if a hearing is requested . . . the running of any period of limitations . . . shall be suspended . . . ." 26 U.S.C. § 6330(e)(1). Section 6330 does not specify the precise time at which the suspension of the limitations period begins following a hearing request. Because the statute does not discuss the issue of timeliness at all, the plain language of §§ 6320 and 6330 does not resolve the question of when the suspension of the limitations period begins if, as in this case, a taxpayer makes a request for a hearing which is initially considered untimely and later deemed timely.

However, the relevant regulations shed light on the issue at hand. The regulations concerning § 6320 state that:

> Q–G1. For what period of time will the periods of limitation under sections 6502, 6531, and 6532 remain suspended *if the taxpayer timely requests a CDP hearing* concerning [a lien]?
>
> A–G1. The suspension period *commences on the date the IRS receives the taxpayer's written request for a CDP hearing. . . .*

26 C.F.R. § 301.6320–1(g)(2) (emphasis added). Suspension is premised on the receipt of a timely request for a hearing. If a request is timely, then suspension begins when the

_____

taxpayer may bring a civil action for damages against the United States in a district court of the United States. Except as provided in section 7432, such civil action shall be the exclusive remedy for recovering damages resulting from such actions.").

12

request is received by the IRS. Here, the Tax Court determined that Gilliam's request for a CDP hearing was timely. As a result, the suspension period began on December 18, 2007, the date the IRS received Gilliam's written request for a CDP hearing.

B.

Gilliam argues that the regulations do not resolve the issue in this case because his request for a hearing was not initially considered timely. As a result, he contends that allowing the regulations to control would be a retroactive conversion of his equivalent proceeding into a CDP hearing and a retroactive suspension of the limitations period in violation of §§ 6503 and 6330. Gilliam also claims that this retroactive suspension amounts to an equitable remedy, which is inappropriate given the limited applicability of equitable doctrines in the context of tax assessments.[6]

---

[6] In response, the government argues that it is not requesting a retroactive suspension of the limitations period because Gilliam actually received a CDP hearing. It claims that, when, in 2010, the Tax Court determined it had jurisdiction to hear Gilliam's appeal, the Tax Court recategorized the decision letter issued by the Appeals Office as a notice of determination. The government argues that in so doing, the Tax Court implicitly concluded that the equivalent hearing Gilliam had received was actually a CDP hearing. Because we resolve this case based on the language of the statute and regulations, we see no need to address the validity of the government's claim that Gilliam's equivalent hearing was a CDP hearing all along.

Similarly, although we agree with Gilliam that courts are generally reluctant to apply principles of equity in the context of tax assessments, s*ee e.g.*, *United States v. Brockamp*, 519 U.S. 347, 348–49 (1997) (establishing that the three-year period during which a taxpayer must request a refund for overpayment of taxes was not subject to equitable tolling even when taxpayers suffered from mental disability throughout the statutory period), our determination that the limitations period was suspended between December 2007 and September 2010 is premised on the language of §§ 6320 and 6330 and the § 6320 regulations rather than equitable considerations.

Gilliam's retroactivity argument ignores the substance and impact of the Tax Court's timeliness determination on the lien proceeding. In assessing whether it had jurisdiction to hear Gilliam's appeal following his equivalent hearing, the Tax Court did not confine its analysis based on the name the government assigned to the hearing Gilliam received. Had it done so, it would have been forced to rule that it lacked jurisdiction to hear his appeal. Instead, the Tax Court looked past the label attached to the procedure Gilliam received and asked whether Gilliam's request for a hearing had been timely. J.A. 85 ("The crucial question is not the label attached to the Commissioner's correspondence but whether the taxpayer timely requested a CDP hearing . . . . [I]f petitioner's CDP hearing request with respect to the [notice of filing tax lien] was timely, . . . we have jurisdiction to review." (citing § 6330(d)(1)). Determining that the request was timely, the Tax Court concluded that it had jurisdiction to hear his appeal. After receiving the benefit of that timeliness determination insofar as his right to appeal was concerned, Gilliam cannot now ask this Court to conclude that his request was untimely for purposes of the limitations period. This is especially true given that the regulations distinguish between whether or not the limitations period is suspended based solely on whether or not the taxpayer's request for a hearing was timely. 26 C.F.R. § 301.6320–1(g)(2) ("[I]f the taxpayer timely requests a CDP hearing concerning [a lien] . . . [t]he suspension period commences on the date the IRS receives the taxpayer's written request for a CDP hearing."). The Tax Court determined that Gilliam's hearing request was timely. That timeliness determination applies both to the question of whether

14

the result of that hearing was appealable and to the question of whether the limitations period was suspended.

Moreover, even assuming that allowing the regulations to control would be a retroactive conversion of his equivalent proceeding into a CDP hearing and a retroactive suspension of the limitations period, Gilliam's contention that such a suspension would violate §§ 6503 and 6330 is unfounded. Gilliam asks this Court to limit the government's power to collect in a manner that neither the statutes nor the regulations require. Section 6330, as incorporated by § 6320, is silent as to whether a hearing request must be timely. *See* 26 U.S.C. § 6330(e)(1) ("[I]f a hearing is requested . . . the running of any period of limitations under section 6502 . . . shall be suspended for the period during which such hearing, and appeals therein, are pending.").[7] The regulations raise the issue of timeliness and use timeliness to distinguish between CDP and equivalent hearings without reference to *when* a timeliness determination must be made. Accordingly, we hold that the plain language of the regulations, which state that so long as a hearing request is timely, "[t]he suspension period commences on the date the IRS receives the taxpayer's written request for a CDP hearing," should control. 26 C.F.R. § 301.6320–1(g)(2). It makes no difference that Gilliam's hearing request was initially considered untimely, it only matters that the final decision of the Tax Court was that his request was

---

[7] As discussed above, 26 U.S.C. 6503(a)(1) is likewise inapplicable as there was no prohibition on making assessments or collecting levies in effect between December 2007 and September 2010.

timely. Thus, the limitations period was suspended between December 2007 and September 2010 and the government's collection action was timely.

## IV.

For the foregoing reasons, the district court's decision is

*AFFIRMED.*