**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 17-1992**

─────────────

MICHAEL E. PINILLA, as Guardian ad Litem for Erick V-P, a minor under the age of 14, and as assignee of parent's claim for medical expenses,

Plaintiff - Appellant,

v.

UNITED STATES OF AMERICA,

Defendant - Appellee.

─────────────

Appeal from the United States District Court for the District of South Carolina, at Columbia. Joseph F. Anderson, Jr., Senior District Judge. (3:15-cv-01077-JFA)

─────────────

Argued: September 26, 2018                    Decided: January 23, 2019

─────────────

Before MOTZ and FLOYD, Circuit Judges, and James P. JONES, United States District Judge for the Western District of Virginia, sitting by designation.

─────────────

Reversed and remanded by unpublished per curiam opinion.

─────────────

**ARGUED:** Edward Graham, GRAHAM LAW FIRM, PA, Florence, South Carolina, for Appellant. Dennis Fan, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Chad A. Readler, Acting Assistant Attorney General, Mark B. Stern, Nitin Shah, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Kara A. Hicks, Senior Attorney, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, Washington, D.C.; Beth

Drake, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Erick V-P suffered an arm injury at birth when he became stuck in the birth canal and required a physician's assistance to complete delivery. Three and a half years later, his guardian ad litem (GAL) initiated a medical-malpractice claim on Erick's behalf pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671–80, alleging that the attending physician had used excessive force on Erick's head and neck and thereby caused him permanent injury. The district court granted the United States' motion for summary judgment, holding that the claim was time-barred by the FTCA's two-year statute of limitations. Because we hold that Erick's medical-malpractice claim did not accrue until medical professionals could have diagnosed him with a permanent injury that was caused by his physician, we reverse.

## I.

Erick was born on July 4, 2010 through a head-first vaginal delivery. The attending physician was Dr. Oluseyi Ogunleye, an employee of Eau Claire Cooperative Health Center. During delivery, Erick's shoulder became lodged behind his mother's pelvic bone, and he could not exit the birth canal without assistance, a condition known as shoulder dystocia. Dr. Ogunleye maneuvered Erick to release his shoulder in order to complete the delivery. Upon birth, Erick's right arm was limp, signifying that he had suffered a brachial plexus nerve injury. Such injuries can occur naturally from the forces exerted by the mother's body during labor, but they can also result from a physician's improper use of force on the child's head or neck. While Erick's older sibling was born

3

with a similar injury that healed soon after birth, Erick never fully recovered the use of his arm.

Nearly three years after Erick's birth, on July 3, 2013, Erick's GAL, Michael Pinilla, filed a Notice of Intent to File Suit (NOI) in South Carolina state court. NOIs are required by South Carolina law prior to filing a summons and complaint for any medical-malpractice claim. *See* S.C. Code Ann. § 15-79-125(A) (2018). Pinilla's NOI asserted his intention to bring a medical-malpractice claim against Dr. Ogunleye and Eau Claire. J.A. 775–80. An accompanying expert affidavit—which South Carolina law requires to be filed with any medical-malpractice NOI—opined that Dr. Ogunleye had used excessive force on Erick's head during delivery. J.A. 764.

At the time, Dr. Ogunleye's employer, Eau Claire, received federal grant money, which made Dr. Ogunleye a federal employee for purposes of the FTCA. Therefore, in compliance with the FTCA, the United States removed the state proceeding to federal court on January 10, 2014, before a summons and complaint were ever filed, and moved to substitute itself as the sole defendant in the case. *See* 28 U.S.C. § 2679(d)(2).[1] Pinilla thereafter voluntarily dismissed his claim so as to pursue the administrative remedies required by the FTCA.

---

[1] Section 2679(d)(2) provides that when defendants are sued in state court for incidents that happened while the defendants were acting within the scope of their federal employment, the civil action or proceeding will be removed to federal court, and the United States will be substituted as the party defendant.

Meanwhile, on January 8, 2014—approximately three and a half years after Erick's birth—Pinilla filed his administrative claim for medical malpractice, a step that generally starts a case for purposes of the FTCA's two-year statute of limitations. *See* 28 U.S.C. § 2401(b) (2012) ("A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues . . . ."). The administrative claim was denied on September 16, 2014. Less than six months later, Pinilla filed his FTCA claim in federal court. *See id.* (stating that a civil action under the FTCA must be filed in district court no more than six months after the administrative agency mails its denial of the claim).

During discovery, Pinilla produced reports from several experts. Dr. Trevor Resnick, a pediatric neurologist, explained that delivery-related brachial plexus nerve injuries can result either from the attending doctor's use of inappropriate lateral traction to the child's head or from the natural forces of labor. Dr. Resnick opined that when they have a natural cause, brachial plexus injuries typically resolve within two years. However, "[u]ntil one knows that the brachial plexus birth injury is permanent, there is no way to distinguish whether it was caused by the natural forces of labor or by the health care provider's manipulation of the head and neck." J.A. 148. Dr. Resnick further opined that before the child's second birthday, the only way to determine whether a brachial plexus injury is permanent is if (1) a magnetic resonance imaging (MRI) scan shows full detachment of the nerve root from where it exits the spine; (2) a surgery is performed that provides direct visualization of permanent nerve damage; or (3) the child's recovery plateaus. For Erick, his MRI did not show full nerve detachment, no

5

surgery was performed because none was medically indicated, and according to Erick's physical therapist, Erick showed significant improvement during his first two years with no plateau. Dr. Resnick therefore concluded that "[u]ntil Erick was two years of age, it was impossible for anyone to determine that this child's injuries were in fact permanent." J.A. 148.

Similarly, Dr. John A. Grossman, an orthopedic surgeon specializing in brachial plexus injuries, stated that "[o]ne cannot begin to determine the cause of a brachial plexus birth palsy until it is first determined whether the injury is temporary or permanent." J.A. 190. Furthermore, "[t]here was no reason for [Erick's] parents to know or believe Erick had permanent nerve damage until he was two years old" because "[h]ealing of brachial plexus nerve damage in a child often occurs up to two years after injury." *Id.* Dr. Steven Pliskow, an obstetrician-gynecologist, also explained that "[a]s an OB reviewing a potential obstetrical negligence case involving brachial plexus damages, I cannot begin my review until I am satisfied there is permanent nerve damage. With temporary injury . . . the cause of the injury could almost never be determinable." J.A. 234. In this case, "[n]ot until Erick was two years of age could anyone determine that this child's injury would prove to be permanent." *Id.*

The record also contains excerpts from the depositions of Erick's parents. Erick's father testified that he believed on the date of Erick's birth that Dr. Ogunleye had caused Erick's injury. He stated that he sought legal counsel about filing a lawsuit "about a year" after Erick started physical therapy, once he noticed that Erick was no longer improving. J.A. 656. Erick's mother testified that she too believed shortly after Erick's

6

birth that Dr. Ogunleye had caused the injury because the doctor had taken Erick "out in a very ugly manner." J.A. 687.

Finally, Dr. Ogunleye testified in his deposition that while he did not remember what he specifically told Erick's parents about the brachial plexus injury, he typically tells parents that these injuries can occur naturally and that they usually "recover spontaneously within a year." J.A. 693.

In the district court, the United States moved for summary judgment. It argued that the case was time-barred by the FTCA's two-year statute of limitations because the administrative claim was filed on January 8, 2014, approximately three and a half years after Erick's birth and over two years after Erick's parents first sought legal counsel. The district court held that the claim had accrued on July 23, 2011, relying on (1) the testimony of Erick's father that he noticed after a year in therapy that Erick had stopped improving; (2) the fact that Erick began therapy on approximately July 23, 2010; (3) Dr. Resnick's statement that one way to determine whether a brachial-plexus injury is permanent is to observe whether the child's recovery plateaus prior to the child's second birthday; and (4) the parents' deposition testimony that they believed shortly after Erick's birth that Dr. Ogunleye had caused his injury. The district court therefore granted the United States' motion for summary judgment. This appeal timely followed.

II.

We review the district court's grant of summary judgement *de novo*. *Kerstetter v. United States*, 57 F.3d 362, 364 (4th Cir. 1995).


III.

The FTCA is a limited waiver of sovereign immunity that empowers litigants to bring certain tort claims against the United States for harms caused by federal employees acting within the scope of their employment. *Raplee v. United States*, 842 F.3d 328, 331 (4th Cir. 2016); *Maron v. United States*, 126 F.3d 317, 321–22 (4th Cir. 1997). Because the FTCA provides that "[t]he United States shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances," 28 U.S.C. § 2674, the courts determine liability by applying the substantive tort law of the state where the alleged negligence occurred, *Raplee*, 842 F.3d at 331. The FTCA's statute of limitations and how it is applied, however, are matters of federal law. *Green v. United States*, 765 F.2d 105, 107 (7th Cir. 1985).

An FTCA medical-malpractice claim accrues when plaintiffs know, or in the exercise of due diligence should have known, both their injury and the injury's probable cause. *United States v. Kubrick*, 444 U.S. 111, 120–22 (1979). The claim accrues—and the FTCA's statute of limitations begins to run—even when the plaintiffs do not know that the probable cause of their injury constitutes medical malpractice. *Id*. When plaintiffs, reasonably relying on a physician's assurances, believe at first that their injury is temporary but later discover that it is not, their claim does not accrue until they learn of

8

the injury's permanence. *See Kerstetter*, 57 F.3d at 366 ("[W]hen a physician assures her patient that the evident ill effects of a medical procedure will be temporary, the patient does not know that he has suffered an 'injury' until he learns that the harm will not in fact go away."); *Otto v. Nat'l Inst. of Health*, 815 F.2d 985, 989 (4th Cir. 1987) (explaining that when a patient's doctors gave her "reasonable and credible" assurances that her injury was temporary, her claim did not accrue until her doctors later informed her that the injury was permanent).

IV.

Applying the two-part test outlined in *Kubrick*, the district court held that Erick's medical-malpractice claim accrued on July 23, 2011, reasoning that at that point Erick's father knew that his son had a permanent arm injury and what had caused it. This decision was in error. In reaching that determination, the district court necessarily defined "knowing," for claim-accrual purposes, as mere suspicions by a layperson, unaided by an expert-provided diagnosis. This decision inappropriately credited the suspicions of a concerned parent who lacked medical training, and so we reverse.

A.

First, the district court found that Erick's father knew in July 2011 that his son had a permanent injury. This determination was inappropriate. It was based on the father's deposition testimony, during which he testified that he had lost hope that Erick would recover as early as July 2011, when he came to believe that Erick's recovery had

9

plateaued. The father's conclusion was not buttressed by the opinion of any medical provider at the time. The district court attempted to add weight to the father's suspicions by stating that according to multiple experts, a plateau in recovery prior to a child's second birthday demonstrates that a brachial plexus injury is permanent. However, that addition by the court compounds the problems with its holding: The record contains a genuine dispute of material fact regarding whether Erick experienced a plateau in recovery at all. While Erick's father testified that he noticed that Erick was no longer improving after about a year in physical therapy, multiple expert reports state that Erick continued to show improvement until his second birthday. Construing the record in the light most favorable to the nonmoving party, as we must on summary judgment, we are therefore left with nothing more than the fact that in July 2011, Erick's father suspected, as a layperson without medical training, that his son's recovery had plateaued and therefore that he would not recover.

In this case, where the full extent of an injury is difficult to determine, mere suspicions by a layperson are insufficient to trigger claim accrual under the FTCA. Just as in previous cases where we have ruled that FTCA claims did not accrue until the plaintiff learned from medical professionals about an injury's true extent, we hold that Erick's parents could not have known that his injury was permanent until they were notified of that fact by a healthcare provider, which could not have happened until Erick reached his second birthday. *See Kerstetter*, 57 F.3d at 363, 366; *Otto*, 815 F.2d at 989.

10

Second, the district court found that Erick's parents knew his injury's probable cause shortly after his birth because both testified that they suspected that Dr. Ogunleye had injured Erick when they saw the manner in which he manipulated Erick in the birth canal. This determination was also in error.

A medical-malpractice claim under the FTCA does not accrue when medical professionals are unable to properly diagnose an injury's cause. Otherwise, accrual would depend upon the purely subjective question of whether particular plaintiffs suspected that their injuries were caused by a healthcare professional. Such a result is inappropriate, not only because this Court has consistently held that claim accrual is governed by the objective standard of what a reasonable person would have known at a particular time, *see, e.g.*, *Gould v. U.S. Dep't of Health & Human Servs.*, 905 F.2d 738, 746 (4th Cir. 1990), but because such a rule could force plaintiffs to file suit before they could obtain the expert testimony necessary to prove their claim. Therefore, when physicians cannot identify the medical cause of an injury, a medical-malpractice claim does not accrue until diagnosis is possible, because without diagnosis, a plaintiff is unable to "identify[] the party likely responsible for her injury." *Kerstetter*, 57 F.3d at 365; *see also Osborn v. United States*, 918 F.2d 724, 733 (8th Cir. 1990) (holding that an injured child's FTCA claim could not have accrued when the child's doctors "had not yet reached a conclusion" as to the cause of the child's injury).

Other U.S. Courts of Appeals agree with this rule. The U.S. Court of Appeals for the Seventh Circuit, for example, has explained that "[a] layman's subjective belief,

regardless of its sincerity or ultimate vindication, is patently inadequate to go to the trier of fact"; therefore, to fix the time of accrual to when a plaintiff suspected harm but no expert could confirm it "would provide [plaintiffs] with nothing more than a delusive remedy." *Stoleson v. United States*, 629 F.2d 1265, 1270 (7th Cir. 1980); *see also Bayless v. United States*, 767 F.3d 958, 968–70 (10th Cir. 2014) (holding that an FTCA claim for a plaintiff injured by exposure to nerve gas did not accrue during the years in which the plaintiff fruitlessly sought a diagnosis from her doctors, even though, at some point, she had enough information to suspect her injury's true cause); *Osborn*, 918 F.2d at 733 (stating, for claim accrual purposes, that a mother should not have been expected to know the cause of her child's seizures "when the doctors, including specialists . . . had not yet reached a conclusion"); *Rosales v. United States*, 824 F.2d 799, 805 (9th Cir. 1987) ("Ordinarily, a plaintiff cannot be expected to discover the general medical cause of his injury even before the doctors themselves are able to do so."); *Nicolazzo v. United States*, 786 F.2d 454, 456 (1st Cir. 1986) ("It was only when [the plaintiff] received a correct diagnosis . . . that the factual predicate of his injury . . . became known to him."); *Harrison v. United States*, 708 F.2d 1023, 1028 (5th Cir. 1983) (holding that the statute of limitations was tolled because "[i]t would be unreasonable to hold [a plaintiff] to a higher degree of medical competence and understanding than the many medical experts she consulted").

Here, according to unrebutted reports from several experts, physicians could not have identified the cause of Erick's injury until he was two years old. By nevertheless holding that his parents knew the injury's cause shortly after his birth, the district court

12

again inappropriately substituted a layperson's suspicions for an expert-provided diagnosis.[2] This was error.

V.

The district court inappropriately credited the suspicions of Erick's parents that Dr. Ogunleye caused Erick permanent injury, which caused the court to rule that the FTCA claim had accrued before medical professionals could have even opined on the injury's permanency or cause. This ruling was in error. Erick's parents could not have known, even with the exercise of due diligence, that Dr. Ogunleye had caused Erick permanent harm until Erick's second birthday, on July 4, 2012. Hence, the case was

---

[2] Additionally, under the rule advanced by the government—where Erick's parents needed to file suit once they merely suspected his injury's cause—it is questionable whether they would have been able to comply with South Carolina's pre-filing requirements. *See Raplee*, 842 F.3d at 331 (stating that FTCA plaintiffs must comply with state pre-filing requirements). As noted above, South Carolina requires that prior to filing any medical-malpractice suit, the plaintiff file an NOI that "name[s] all adverse parties as defendants," "contain[s] a short and plain statement of the facts showing that the party filing the notice is entitled to relief," and is accompanied by "an affidavit of an expert witness." S.C. Code Ann. § 15-79-125(A). The expert affidavit must "specify at least one negligent act or omission claimed to exist and the factual basis for each claim based on the available evidence at the time of the filing of the affidavit." S.C. Code Ann. § 15-36-100(B); *see also Grier v. AMISUB of S.C., Inc.*, 725 S.E.2d 693, 697 (S.C. 2012) (holding that expert affidavit must provide an opinion on the breach of the standard of care but need not opine as to proximate causation).

Here, in July 2011—when the claim accrued according to the district court—Erick's parents would have been forced to find an expert who could identify Dr. Ogunleye's negligent behavior. But the record contains multiple expert reports stating that medical professionals would have been unable to opine on that subject until Erick's second birthday, on July 4, 2012. It is therefore inappropriate to find that the FTCA claim accrued before his second birthday.

13

timely filed, less than two years after accrual, when the administrative claim was filed on January 8, 2014. We reverse the district court's grant of the United States' motion for summary judgment and remand for further proceedings consistent with this opinion.

*REVERSED AND REMANDED*